ESTATE OF LILLIAN MAY SCHROEDER, DECEASED, CITY BANK FARMERS TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19381. Promulgated August 24, 1949.

*Herbert P. Polk, Esq.*, for the petitioner.
*Stephen P. Cadden, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: The valuation for estate tax purposes of shares of stock of a closely held corporation imposes at best a difficult question of fact. The matter is made more difficult where, as here, the overwhelming control of the company is in foreigners and the company itself is operating under governmental supervision.

The Heberlein Patent Corporation was primarily organized and operated for the purpose of exploiting in this country the use of certain textile patents of Swiss origin on a royalty basis. The corporation's earnings from this source had been steadily going down in the years immediately prior to decedent's death, partly due to the war and partly due to a change in styles. On the effective date of valuation, the Heberlein Corporation had a large portfolio of American securities of companies whose shares were listed on the New York Stock Exchange.

The respondent reached his valuation of the shares in question by the simple expedient of taking the value of the securities in the portfolio and adding to that figure his value of the patents and, after deducting outstanding liabilities, dividing the remainder by the number of outstanding shares, thus reaching his figure of $41.84 per share. But it is obvious that this figure, which would be the liquidating value of the Heberlein Corporation under ideal circumstances and without cost, can not be said to be the fair market value of that corporation's shares. There is no suggestion that Heberlein contemplated liquidation and certainly the shares of the decedent gave no control whatever which could affect the course of action of the corporation. The Heberlein Corporation had incurred losses during four of the past five years and had paid a dividend in only one of those years. There was no market for the stock except among the few individuals interested in the corporation. Only one sale of shares was made in 22 years, and that sale was made in May 1947, a few months after the effective date with which we are concerned. The price received for the 100 shares on that date was $25 per share and the stock sold was the stock of a deceased stockholder and the shares were sold to the president of the Heberlein Corporation. A diligent effort resulted in no other prospective purchaser. Admittedly, the sale of one small block of stock can not be said to establish the fair market value of the shares. Nevertheless we think this figure more nearly represents what a willing buyer would pay a willing seller than the figure determined by the respondent.

After careful consideration of the entire record, it is our opinion that the fair market value of the shares in question was $25 per share.

The remaining issue deals with the right of the petitioner to a deduction from the decedent's gross estate of the sum of $8,460 under the provisions of section 812 (c) of the Internal Revenue Code.[1]

Respondent apparently agrees that all of the factors required to entitle petitioner to this deduction with respect to principal payments made by 205 East 74th Street, Inc., on its note inherited from the estate of the prior decedent and deposited in this decedent's checking account have been established, except that respondent has determined that no part of this bank balance has been identified as having been received by this decedent from the prior decedent.

Respondent on brief concedes, as well he may, that the commingling in a common bank account of previously taxed cash with non-previously taxed cash does not necessarily make the previously taxed cash unidentifiable. *John D. Ankeny, Executor*, 9 B. T. A. 1302; *Frances Brawner, Executrix*, 15 B. T. A. 1122. As will be noted from the facts as found, the aggregate of withdrawals made by this decedent since the death of her husband was at all times less than the total of the balance on the date of her husband's death, plus the deposits from sources other than previously taxed cash made during the period between the two deaths. Of course, if the previously taxed cash had been deposited in this account and then withdrawn before additional non-previously taxed cash was deposited, it could not be said that the credit balance on the date of decedent's death was traceable to previously taxed cash. But the credit balance in the account was not at any time less than the amount of previously taxed cash which had been deposited. On facts substantially similar with those appearing in the instant case, we have held the identification sufficient. *John F. Archbold, Executor*, 8 B. T. A. 919; *John D. Ankeny, Executor, supra; Estate of James Miller*, 3 T. C. 1180. In *Frances Brawner, Executrix, supra*, where the facts are on all fours, we stated:

* * * Other withdrawals than these mentioned were made during this time from this account by decedent, but inasmuch as the aggregate of such was

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

* * * * * * *

(c) PROPERTY PREVIOUSLY TAXED.—An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, * * * where such property can be identified as having been received by the decedent * * * from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. Property includible in the gross estate of the prior decedent under section 811 (f) * * * received by the decedent described in this subsection shall, for the purposes of this subsection, be considered a bequest of such prior decedent * * *. This deduction shall be allowed only where * * * an estate tax imposed under this chapter or any prior Act of Congress, was finally determined and paid by or on behalf of * * * the estate of such prior decedent, * * * and only in the amount finally determined as the value of such property in determining the value of * * * the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate * * *.

less than the total deposits, independent of this bequest, made to the same account during the period, it follows that the unexpended balance of this bequest, not withdrawn for investment as hereinbefore noted, remained in said account and formed a part of the assets of the estate of decedent at the time of his death. We have previously held, under such circumstances, that funds thus identified are deductible under section 303 (a) (2), *supra, John D. Ankeny, Executor,* 9 B. T. A. 1302; *John F. Archbold, Executor,* 8 B. T. A. 919.

The respondent, in reliance on *Rodenbough* v. *United States,* 25 Fed. (2d) 13, and *United States* v. *Rodenbough,* on remand (Dist. Ct., E. Dist. Pa.), argues that we should indulge the presumption that all withdrawals from petitioner's bank account for personal purposes came from the previously taxed property and as the amount of her withdrawals during the five years from her husband's death to her own death exceeded the amount of the previously taxed property, there has been no proper identification. As pointed out by Judge Duffy in *Horlick* v. *Kuhl,* 62 Fed. Supp. 168, 174, the rule as suggested in the *Rodenbough* case has never been accepted by the Tax Court and, in fact, has only been followed in one case by the District Court for the Southern District of New York.

It is our opinion that the petitioner has identified the sum of $8,640 in decedent's bank account at the Irving Trust Co. as previously taxed property of the estate of decedent's husband, who died within the period of five years from decedent's death, and, in the circumstances, this sum is properly deductible in determining the value of decedent's estate.

*Decision will be entered under Rule 50.*