In the Matter of the Estate of M. Boas Lande, Otherwise Known as Marcus B. Lande, Deceased.

Surrogate's Court, New York County, September 15, 1933.

*Bokor & Epstein,* for the petitioner.

*Edgar Hirschberg,* for the State Tax Commission.

Delehanty, S. By his will testator directed that his residuary estate be divided into two equal parts, one of which he gave to his son and the other of which he directed be held in trust for his daughter until she became twenty-five, at which time he directed that she receive the principal. Testator further provided that the trust might be terminated by act of the trustees when his daughter became twenty-one and he also permitted invasion of the corpus of the trust fund, if the trustees deemed such action proper.

A *pro forma* order has been entered fixing the estate tax on the basis of allowing in respect of the son the full exemption of $5,000 provided under section 249-q, subdivision b, of the Tax Law and on the basis of allowing in respect of the daughter an exemption equal only to the computed value of the use by her of the capital representing the other half of the residuary for a period beginning with the date of death of testator and terminating the day before the attainment of age twenty-five by his daughter. The effect of this method of computation is to allow, in fixing the estate tax, an exemption only of $920 in respect of the interests passing to the daughter.

From this *pro forma* order the estate appeals, and assigns error in that the allowance made in respect of the interests passing to

the daughter was erroneously computed and should equal at least the value of a full life estate in the fund, or $5,000, whichever is the smaller sum. It asserts specifically that the valuation by the State Tax Commission of the daughter's interests is wholly arbitrary and is unwarranted by the statute.

The Tax Law (§ 249-q, subd. b) provides that the estate tax is not payable in respect of " the amount of the net estate, not exceeding five thousand dollars in each instance, transferred to a * * * lineal descendant."

The question here involved is, what was the value of the net estate transferred to the daughter? The State Tax Commission takes the position that the daughter now has no right to take any of the capital of the trust; that she may never get the capital since she may never reach the specified age; that the provisions for invasion of principal cannot enlarge her rights since such invasion depends wholly on the acts of others; that she has no true life estate since her expectancy of life carries beyond the date at which if she survives she would receive the principal, and hence that the only interest actually transferred to her is the use of the fund for the limited period beginning with testator's death and ending on the day before she attains twenty-five years. All else is contingent and uncertain, it is claimed, and hence not entitled to the benefit of the exemption. (*Matter of Chollett*, FOLEY, S., 148 Misc. 782; *Matter of Smith*, 147 id. 73; *Matter of Leichtman*, Id. 589.)

There can be no doubt of the soundness of the argument that the right to receive the principal either through permitted invasion or through survivorship is contingent and uncertain. Not so free of doubt is the contention that is made respecting the actual extent of the interest transferred to the daughter of testator. As argued by the State Tax Commission exactly the same property would have been transferred to her (within the terms of the Tax Law) if the will had provided that her sole and only interest in the fund was the right to receive income until the day before attaining the prescribed age with the principal then becoming payable to her brother. No question could be made that if the will had given her the income of the fund for her life with remainder to another, the property transferred (within the terms of the Tax Law) would have been of the value of the use of the fund over the period of her life expectancy as fixed by the mortality tables.

The position of the State Tax Commission is that by giving his daughter more than a conventional life estate in the fund, testator has given her less; that by giving her the contingent right to have the principal in possession he has transferred to her less property than if he had forbidden her ever to have the principal. Here is

a genuine paradox. In computing the value of the daughter's interest the State Tax Commission has necessarily indulged in the presumption that she would live (because the mortality tables say so) until the day before she attained twenty-five. The Commission refuses to presume that she will be living on the very next day (though the same mortality tables say she will) and so reach the conclusion that her interests in the property are limited to the period stated. The lack of logic is apparent. If the tables are available for use at all, they establish that the daughter will have the fund in possession. If the uncertainty of human life is urged as the standard (as needs must be the basis for the State Tax Commission refusing to assume that the daughter will be alive even one day after the limit set by their computation), then the daughter received from testator only property of the value of one day's use of the fund. Having survived the testator she got something of value. That something could have been — in certainty — only the value of the use of the fund on the day that it was ascertained in fact that she had survived. Her living the next day was uncertain. The realization by her of the value of the use of the fund on the next day must likewise have been uncertain. Thus we reach a *reductio ad absurdum*.

Obscurity of thought on the subject is due to confusing the actual estate given under the will with the expectancy under the mortality tables. The latter is a mere administrative yardstick for measuring value after the true nature of the estate is first ascertained. It is not itself the actual estate. Indeed it is to be doubted if ever the yardstick of expectancy coincides precisely with the actual duration of the life in a given case. In every given case the actuality is the ultimately ascertained term of life of the particular individual. The rule of computation applied is a pure artificiality constructed on an assumed average existence. The rule operates only as a medium for ascertaining value, and not as a measure of life. Would a remainderman be kept out of his principal until the term of expectancy was exhausted though the life tenant died before that date? Or might a remainderman demand his principal at the termination of the expectancy, though the life tenant lived beyond that date? To pose the questions is to record the answer. There are two steps to be taken — necessarily separately. The first requires ascertainment of the estate conveyed. Here there is no point at which it can be said that the estate conveyed to the daughter did not equal at least a life estate. If she died the day after testator, she had then possessed and enjoyed a full life estate in the fund. If she died on the day before her twenty-fifth birthday, she had until then possessed and enjoyed a full life estate. If she died

at any date in between, she had then possessed and enjoyed a full life estate. If she died on her twenty-fifth birthday, she had then possessed and enjoyed a full life estate, and there then came into operation a further right (inuring to her estate) to have the fund. It is not sound to say that the possession of the fund at age twenty-five may result in waste or consumption or loss of the principal and hence, because she has it in possession, she may in some contingency have had less than the mere right to the income from it. " It matters not how contingent or uncertain the duration of an estate may be, or how probable is its determination in a limited number of years, if it is capable of enduring for the term of a life, it is within the category of estates for life." (1 Washburn Real Prop. [6th ed.] p. 104.) So, what was transferred to her was at least a life estate in the fund.

The second step requires the use of the artificial yardstick by which the law administratively puts in the form of money the value of the interest transferred. It is of no consequence (in so far as definition of the interest transferred is concerned) whether the dollar value ascertained by use of the artificial measure be large or small. That measure must be used.

Returning to a common sense view of what the will transferred to the daughter, we see that she received something less than the absolute ownership of the fund, but definitely something more than a life estate in it. The limited and partial estate suggested by the State Tax Commission as the true measure of the property transferred has no support in the language of the will and none in ordinary concepts of property rights. The something more than a conventional life estate, though tangible, is not computable and hence the estate is entitled only to have the amount of the statutory exemption applied to the value of a whole life estate in favor of the daughter computed in the usual way.

The appeal is sustained to the extent stated. Submit on notice order modifying accordingly the order fixing the tax.