In the Matter of the Estate of H. TYLER MILLER, Deceased.

Surrogate's Court, Monroe County, May 24, 1948.

*Harlan F. Calkins* for Security Trust Company, as executor of H. Tyler Miller, deceased, appellant.

*Christopher H. D'Amanda* for State Tax Commission, respondent.

WITMER, S. This is an appeal by the executor of the will of H. Tyler Miller, deceased, from a *pro forma* order of January 23, 1948, fixing the estate tax herein. The computations of the respondent embodied in the order show the estate to have a cash value of $154,208.26, and fix the taxable interest thereof at $86,623.56. The tax deposition filed by the executor-appellant shows the estate assets to be $140,489.10 and the taxable interest to be $72,904.40. The difference in the amount of the taxable

estate arises from the valuation placed upon 574 shares of stock of Unit Parts Rochester Corporation, the appellant valuing it at $104.50 per share, the respondent at $128.34 per share.

Appellant's valuation is based upon a stock purchase agreement entered into by testator and his two associate stockholders in the Unit Parts Rochester Corporation, all of the outstanding stock of such corporation being owned by them equally. The contract bears date December 19, 1946. Testator died two days later on December 21, 1946. Upon the argument of the appeal, without objection both parties offered evidence. Appellant offered the stock purchase agreement and testimony of the attorney who drafted it concerning the facts surrounding its execution and the condition of health of testator. Respondent offered balance sheets and profit and loss statements of the corporation for the year ending July 31, 1946, and for the four preceding fiscal years.

By the terms of the stock purchase contract each of the three parties thereto agreed substantially, among other things, that, in view of the fact that the stock was unlisted and closely held and in order to establish a market therefor and for the mutual protection of the parties, upon the death of one of the three parties the other two would each buy one half of the stock of the one first dying for the sum of $104.50 per share. The agreement binds the estate of the one first dying to sell his stock for such sum. It also provided that by written, unanimous agreement the parties might change the price at any time. Although testator had had a heart attack a considerable period prior to the date of the agreement, he was in apparent good health on that date. The evidence shows that the agreement was not made in contemplation or expectation of his early death, but for the mutual protection of the parties thereto.

Respondent has arrived at the valuation which it has placed upon the stock by use of the formula contained in *Matter of Foster* (239 App. Div. 806, affd. 263 N. Y. 639) based upon the corporation's balance sheets and profit and loss statements, and it claims that the contract is of no help to appellant because it amounts to a gift made in contemplation of death, if not a subterfuge.

Respondent's position is untenable. The contract was made in good faith and not with intent to defraud the State or Federal Governments in respect of the estate taxes, and was not made in contemplation of death. (*Matter of Fieux,* 241 N. Y. 277.) The rule for determining valuation of stock approved in *Matter of Foster* (*supra*) was not intended to be exclusive, but merely

the method to be employed when no better measurement exists. (*Jones* v. *National Chautauqua County Bank,* 272 App. Div. 521, 530; *Matter of Flickinger,* 176 Misc. 604.) The contract established a market value for the stock and at the same time fixed its value to testator's estate for tax purposes as well as for all other purposes. Resort to methods of estimating and computing the value of closely held stock is wholly unnecessary and improper when its actual value has been fixed and determined by a bona fide contract entered into by the testator. (*Matter of Vivanti,* 138 App. Div. 281, appeal dismissed, 200 N. Y. 513; *Salvage* v. *Commissioner of Internal Revenue,* 76 F. 2d 112, 114, affd. *sub nom. Helvering* v. *Salvage,* 297 U. S. 106, 109; *Commissioner of Internal Revenue* v. *Childs' Estate,* 147 F. 2d 368, 371–372; *Lomb* v. *Sugden,* 82 F. 2d 166.) In *Lomb* v. *Sugden,* last cited, the Second Circuit Court of Appeals said at page 167: '' We there determined [*Wilson* v. *Bowers,* 57 F. 2d 682] that an option contract, giving stockholders a right to purchase at a specified price, upon the owner's sale or death, limited the value of the stock to the low price at which he or his executors were obliged to sell it. We can see no essential difference between that case and this. The transferees of the decedent here would necessarily be either members of a group of stockholders who were mere donees, or else would be members of a group of stockholders who had the privilege of purchasing the shares at the limited price of $69.445 per share. In either case the decedent had stock which she was obliged to give away or to sell at $69.445, if members of the group were willing to pay that price (30 per cent. less than the assessed value) for the proportion of the stock offered for sale to which each was entitled under the agreement. As HOLMES, J., said in *Edwards* v. *Slocum,* 264 U. S. 61, 63, 44 St. Ct. 293, 68 L. Ed. 564, quoting from *Knowlton* v. *Moore,* 178 U. S. 41, 49, 20 S. Ct. 747, 44 L. Ed. 969, the tax is on ' not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death.' Mrs. Lomb at the time of her death was restricted to a price of only $69.445 because she was obliged either to donate her stock to the other stockholders or to offer it to them at that low price. In either event that price was the most that she could obtain for her stock in the natural course of events.''

The Federal estate tax law in this respect is similar to the estate tax law of this State, and the above Federal decisions are accepted as good authority in this case. (*Matter of Russell,* 294 N. Y. 99; *Matter of Flickinger,* 176 Misc. 604, *supra.*) In

*Matter of Russell (supra)* THACHER, J., writing for the court, said at page 103: " It is the established legislative policy of the State to conform the estate tax law to the provisions of the Federal estate tax law, and in determining the effect of provisions of the New York Tax Law similar to those of the Federal estate tax law we give great weight to the construction of corresponding provisions adopted in the Federal courts ' for the purpose of maintaining uniformity of administration of the Tax Law which the Legislature has sought to achieve.' "

The tax in this case should, therefore, be determined upon the basis of the value of the stock as provided in the contract.

Submit decree accordingly.