John D. Bennett, S.
This is an appeal by the executrix from
a pro forma order of this court dated September 28, 1964 fixing the New York estate tax in the amount of $58,854.64. The appeal is based on the ground that the State Tax Commission “ erroneously ” included in the gross estate the corpus of an inter vivos trust created by decedent in 1926 and which was valued by the Estate Tax Appraiser in his report at $950,018.53.
The facts giving rise to this controversy are not in dispute. The attorneys for both the executrix and the State on their argument of this appeal agreed that the facts as set forth in the record are complete and undisputed and that there was no necessity for a hearing on said facts. The basis for the disagreement is solely the application of section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law to the agreed facts.
These may be summarized as follows: (1) Decedent created an inter vivos trust in 1926 which provided for the payment of income to him for life, and after amendment in 1932 provided that the trust corpus would pass to the issue of decedent’s marriage to his first wife, and in default of such issue, then in such manner as decedent might appoint by will.
(2) Decedent died on November 25, 1960 at the age of 65 years survived by a son of his first marriage who was then 35 years of age. Delating these facts to the trust indenture above summarized, decedent’s power to appoint the remainder of the trust was conditional on his surviving his son.
(3) At the date of decedent’s death he was suffering from cancer of the lungs and brain. This was discovered approximately three months prior to his death following a gall bladder operation and at that time was diagnosed as being terminal. Decedent’s son on this date was in good health.
(4) Decedent’s will directed that all estate and inheritance taxes with respect to his estate, including not only property passing under the will but also any other property or interest *456 taxable in Ms estate, be paid as an administration expense out of the residuary estate and that the balance of the estate pass to his wife who survived him. Decedent’s probate estate had a total value of approximately $235,000. His gross estate, excluding the corpus of the trust in issue, was approximately $272,000 on which the New York estate tax would have been approximately $3,500.
(5) Upon audit of the Federal estate tax return, the Internal Revenue Service did not include the corpus of the trust in decedent’s gross taxable estate. The State included it under the provisions of section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law on the theory that the possession or enjoyment of the property could be obtained only by surviving the decedent and that the value of decedent’s power of appointment (the equivalent of a reversionary interest) immediately prior to decedent’s death exceeded 5% of the corpus of the trust. This value was determined by the Superintendent of Insurance pursuant to section 249-v of the Tax Law at the request of the appraiser to determine and certify the “ Present value of contingent remainder in fund of $950,018.53 payable on death of life tenant age 65 provided he survives a person age 35 ’ ’.
The issue here concerns the method of valuation of the trust corpus. The State’s position is that the cited provisions of the Tax Law make mandatory the use of mortality tables in determining whether or not decedent’s reversionary interest in the instant trust “ immediately before the death of the decedent exceeds five per cent of the value of such property ”, and that there is no provision for the use of any other method to determine such value.
The executrix takes the position that the valuation of decedent’s interest by the use of mortality tables under section 249-v pursuant to section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law merely prescribes a method of valuing such an interest, but that such method is not mandatory or exclusive. She argues that although section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law requires the determination of decedent’s reversionary interest immediately prior to his death, at that crucial moment the undisputed facts show that the decedent’s life expectancy was nil due to the terminal nature of his illness; that the application of mortality tables to this situation was unrealistic in that it was necessarily assumed that the decedent was in normal health and had a life expectancy of 12 years or more; that the computation of such an interest by the use of mortality tables must yield to the facts of the case,
*457 There is a paucity of New York decisions on the point in issue. The executrix has referred the court to Matter of Chollet (148 Misc. 782) and Matter of Birnbaum (N. Y. L. J., Oct. 22, 1965, p. 17, col. 5). In each of these cases it was held in substance that the future estate to be valued was incapable of computation because of the factors present in each, such as invasion rights, possibility of issue, and probability of vesting, which rendered impossible an actuarial ascertainment of the interest concerned. This is not the case here. The decedent’s reversionary interest is capable of determination. The court is of the opinion that the cases cited are not in point.
The State has based its determination primarily on the fact that the Tax Law provides for no basis other than the use of mortality tables to determine the taxable value of an interest such as we have here. It cites Matter of White (208 N. Y. 64) as its authority for the proposition that the use of the tables is mandatory. This 1913 case interpreting section 230 of the Tax Law which now, as then, provides for the use of mortality tables by the appraiser in valuing future and limited estates and interests, can be distinguished from the instant case. There the court held that the value of the interest of a life beneficiary in a trust who died before completion of estate tax proceedings must be computed on the basis of her life expectancy according to the tables as of the date of the death of the decedent whose will established the trust, and that such value cannot be affected by subsequent events. There were no facts before that court relating to the cause of death of the life tenant so as to enable the court to determine what the life expectancy of the life tenant was at the time of the testator’s death.
In summary, neither party has referred the court to any case in this State holding for or against the proposition that sections 230, 249-r (subd. 3, par. [a], el. [iii]) and 249-v of the Tax Law, as such statutes read at the date of decedent’s death in 1960, provide the exclusive method for the determination of the percentage value of a reversionary interest of a decedent immediately prior to his death in the corpus of a trust created during his lifetime.
On the other hand, the executrix has referred the court to many cases under the United States Internal Revenue Code dealing with the question of valuation of life estates and future interest by mortality tables. Even those cases in the main deal with the valuation of remainder interests rather than a reversionary interest of a decedent. However, in Hall v. United States (353 F. 2d 500), decided by the United States Court of *458 Appeals, Seventh Circuit, November 8, 1965, the issue before the court was whether or not an inter vivos trust established by the decedent in 1926 should be includible in her gross estate for tax purposes where she retained a reversionary interest payable to her if she survived her issue, and she died in 1960 survived by a son. The court held in affirming the District Court that the value of her reversionary interest was less than the 5% required by the Internal Revenue Code, section 2037, and that in determining such value, proof of the life expectancy of the settler-decedent is not limited to the mortality tables. Other factors such as the actual condition of her health are to be considered in establishing such value. In that case it was found by the District Court and affirmed by the cited case that decedent’s reversionary interest based on the actual state of her health was 2.61% and not the 9.413% that the mortality tables would have produced.
As Surrogate Delehanty stated in Matter of Ayer (192 Misc. 419, 420): “ It is the settled law of this State (Matter of Rogers, 296 N. Y. 676; Matter of Weiden, 263 N. Y. 107; Matter of Cregan, 275 N. Y. 337; Matter of Russell, 294 N. Y. 99) that ‘ great weight ’ is to be given to the construction made by Federal courts of provisions of like import in the Internal Revenue Code ”. Section 2037 of the Internal Revenue Code cited above is of like import to section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law. The State Tax Commission itself recommended the changes to section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law which were in effect at the date of decedent’s death “ to conform to corresponding provisions of the Internal Revenue Code as amended by the Revenue Act of 1950 and the Powers of Appointment Act of 1951 ”. This was a step along the road which ultimately arrived at enactment of article 26 of the Tax Law which in substance incorporated the provisions of the Internal Revenue Code into the New York Estate Tax Law and now makes binding the determination of the Internal Revenue Service as to the taxability or nontaxability of property in respect to the New York estate tax.
This court cannot agree with the State Tax Commission’s contention that the Legislature intended the procedure provided by section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law and section 249-v of the Tax Law to be mandatory in all cases. In the absence of any New York case holding that the actual circumstances of a decedent’s state of health immediately prior to his death may not be taken into consideration in valuing for estate tax purposes his reversionary interest in the corpus of an inter vivos trust, and that the only method which may be used in *459 making such a valuation is as prescribed in section 249-r (subd. 3, par. [a], cl. [iii]) of the Tax Law, the court must give “ great weight ” to the construction given by Federal courts of provisions of “like import” in the Internal Revenue Code. Since section 2037 of the Internal Revenue Code is of like import, this court must give such weight to such Federal cases as Hall v. United States (supra), and hold that in view of the decedent’s terminal illness immediately prior to his death, his life expectancy at that moment was practically nil and that the use of mortality tables to value his reversionary interest must give way to realism. On this basis, decedent’s reversionary interest in the trust must of necessity have been less than 5% and therefore the court holds that the corpus of the trust shall be excluded from the gross estate of decedent and that the pro forma tax order dated September 28, 1964 be modified accordingly.